RITA KRANTZ vs. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.

Suffolk. January 8, 9, 1957. — April 15, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Insurance,* Proof of loss; Accident Insurance; Life insurance: double indemnity. *Evidence,* Presumptions and burden of proof. *Death Certificate. Autopsy. Words,* "Due proof."

The fact that the beneficiary of a life insurance policy containing an accidental death double indemnity clause excluding death by suicide from its coverage deleted recitals of suicide as the manner of the death of the insured by drowning from copies of a death certificate and of an autopsy report of the medical examiner included with an express statement of the deletions in a proof of loss furnished to the insurer in connection with a claim under such clause did not, in the absence of prejudice to the insurer, preclude reliance on those copies in determining the issue whether the beneficiary had, as required by such clause, furnished the insurer "due proof" of a death within its coverage. [705, 707–708]

The clause added to G. L. (Ter. Ed.) c. 46, § 19, by St. 1945, c. 570, § 1, "but nothing contained in the record of a death which has reference to the question of liability for causing the death shall be admissible in evidence," would be inapplicable to a death certificate showing death by drowning "Suicide during temporary state of insanity" if introduced in evidence in an action by the beneficiary of a life insurance policy to recover a double indemnity payable upon death by accident and not by "self destruction, sane or insane." [705, 710]

By reason of G. L. (Ter. Ed.) c. 38, § 7; c. 46, §§ 1, 19, there was no merit in a contention that an opinion expressed in an autopsy report by a medical examiner that the manner of a death by drowning was suicide would be inadmissible in an action by the beneficiary of a life insurance policy to recover a double indemnity payable upon death by accident and not by "self destruction." [705, 710–711]

Preliminary "due proof" required by a double indemnity clause of a life insurance policy, that the death of the insured resulted from accident "as a direct result thereof, independently and exclusive of all other causes, and . . . was not caused directly or indirectly by disease or bodily or mental infirmity or by self destruction, sane or insane," was furnished the insurer by a proof of loss tending to show that the insured, whose death was by drowning, had a happy home life and was

in good health and spirits and free from worries prior to a pleasant spring day when he was injured in an automobile accident which resulted from his vision becoming blurred while driving and in which he lost consciousness, that he was treated for his injuries, that later that day clothing and personal effects of his were found on the bank of a river near a place where he was accustomed to go for relaxation after work, that the configuration of the bank was such that one who lost his balance thereon near the water's edge might accidentally fall into the river, and that the next day his body was found in the river near that place. [711, 713]

A statement in a proof of loss submitted by the beneficiary of a life insurance policy providing double indemnity for death resulting directly from an accident and "not caused directly or indirectly by . . . bodily . . . infirmity," that the insured "either became dizzy or fainted and toppled into . . . [a] river and drowned," was not conclusive that there was an accident caused by "bodily . . . infirmity." [713]

Death by accidental drowning is death by "external, violent" means within double indemnity provisions of life insurance policies. [713]

CONTRACT. Writ in the Superior Court dated December 17, 1952.

Judgment for the defendant upon its motion for summary judgment was ordered by *Cahill, J.*

*Henry N. Silk,* (*Abraham Wekstein & Morris A. Greenbaum* with him,) for the plaintiff.

*Jeremiah W. Mahoney,* for the defendant.

WHITTEMORE, J. This is an action of contract to recover on two insurance policies issued on the life of the plaintiff's deceased husband. The plaintiff is the beneficiary under each policy and seeks to recover under double indemnity provisions by reason of the death of the insured by drowning on or about April 22, 1952. The defendant filed a motion for summary judgment under G. L. (Ter. Ed.) c. 231, § 59, as appearing in St. 1955, c. 674, § 1, asserting that the issue of law determinative of the right of the plaintiff to recover was whether the plaintiff had furnished "'due proof' . . . of the death of the insured as the result of bodily injury, caused solely by external, violent and accidental means and that the death of the insured was not caused by self destruction." The trial judge ruled that the proof was insufficient as matter of law and ordered judgment for the defendant. The plaintiff duly claimed an ex-

ception to and appealed from this order. We consider the case on the bill of exceptions.

The asserted insufficiency in the proof which the defendant stresses in its brief stems from deletions made by the plaintiff in two attached copies of documents. The letter of the plaintiff accompanying the proof of loss stated the submission therewith of "12. A certified copy of the record of death . . . on April 22, 1952, stating the cause of death as asphyxia due to drowning, which certified copy is . . . complete . . . except that there has been deleted therefrom the legend relating to the manner of death. I am informed by my attorneys that under Massachusetts G. L. (Ter. Ed.) c. 46, § 19, as amended, the opinion appearing on the Certificate of Death relating to the manner of death is inadmissible in evidence in the event of litigation. I intend to adopt and admit only those facts appearing on the record as forwarded herewith. 13. Photostatic copy of report of medical examiner . . . which is a complete copy . . . except that his opinion as to the manner of death has been deleted. I am informed by my attorneys that under the case of *Jewett* v. *Boston Elevated Railway*, 219 Mass. 528 (1914), the opinion of the medical examiner as to the manner of death is inadmissible in evidence in the event of litigation. I intend that the report as submitted shall be evidence of the facts contained therein."

The certified copy of record of death attached to the proof, under the printed heading "Disease, or Cause of Death (Primary or Secondary)," showed the following typed entry: "asphyxia due to drowning [blacked out space] Boston Charles River — Drowning — asphyxia."[1]

---

[1] The certified copy of record of death attached to the affidavit supporting the defendant's motion for judgment shows, in long hand, that this entry was as follows: "Asphyxia due to drowning Suicide during temporary state of insanity Boston. Charles River. *Autopsy*" (emphasis added). There was no counter affidavit, so that for purposes of the motion the form stated by the affidavit was taken as admitted under the statute. There is no suggestion that the plaintiff was responsible for the difference in wording apart from the deletion, and nothing concerning the issues before us turns on that difference.

The attached copy of the autopsy report, as printed in the bill of exceptions, stated in part, "Pathological diagnoses: 1. Asphyxia due to drowning  2. Chronic gastric ulcer 3. Atherosclerosis generalized, moderate  4. Bilateral hydrothorax, minimal  5. Contusion of left forearm, recent. And I further declare it to be my opinion that the said Benjamin Krantz came to his death as the result of asphyxia due to drowning._ and that no further inquiry is necessary" (emphasis added).

The plaintiff also crossed out printed matter on the form of "Proof of Death" supplied by the defendant which provided that "The undersigned hereby agrees that . . . [she] shall be bound by all declarations contained in" documents of various kinds described in the print.

The affidavits included in the proof stated facts tending to show the following: The insured had a happy home life and had been in good health and spirits and free from financial or other worries prior to an automobile accident on Cambridge Street in Brighton at about 11:30 A.M. on April 21, 1952. The insured lost consciousness in the accident and was taken to a hospital. He said the accident resulted from his vision becoming blurred while driving and complained of injury to his head. After treatment at the hospital the insured went to the police station and to the garage to which his automobile had been towed. Late in the afternoon of April 21, 1952, two boys found on the Cambridge bank of the Charles River between the Boston University Bridge and the Boston and Albany Railroad Bridge, near the place where the insured had been accustomed to go to lie in the sun for relaxation after work, the insured's jacket with automobile keys and wallet. The weather was good on that day, the sun shone, and the temperature in the afternoon reached 67° F. On the next day the body of the insured was found in the river about twenty-five feet from the Cambridge shore between the two bridges. The configuration of the grass bank at the location where the jacket was found and of the adjacent "rip rap" sloping rock structure below the grass was so described in an affidavit as to indicate the pos-

sibility that one who lost his balance on the bank near the water's edge might accidentally fall into the river.

1. The plaintiff could not make due proof of accidental death if she adopted as a part of her proof the opinion or the recital in respect of suicide. See *Page* v. *Commercial Travellers' Eastern Accident Association*, 225 Mass. 335, 337. The course followed by the plaintiff showed emphatically an intention to disclaim and disavow this evidence. Substantively we do not think that the plaintiff by the deletions accomplished any more or any less than would have been the case had the proofs included the unaltered documents with unequivocal disclaimer of the opinion and statement of suicide. But the plaintiff could reasonably have feared that if she included in her proof affirmative evidence of death by suicide she would disqualify the proof, *Howe* v. *National Life Ins. Co.* 321 Mass. 283, 287–288, *Cooper* v. *Prudential Ins. Co.* 329 Mass. 301, 304, *O'Neil* v. *Metropolitan Life Ins. Co.* 300 Mass. 477, 481, or make admissible at the trial evidence which might otherwise be inadmissible. *Nichols* v. *Commercial Travellers' Eastern Accident Association*, 221 Mass. 540, 547. The plaintiff so acted as to have the benefit of avoiding the direct exhibition of the opinion of suicide in the event that it should be held that such formal nondisclosure is significant. In the absence of prejudice to the defendant, and we discover none, this care to preserve her rights is not a basis for voiding the proof. The deletions did not deceive the defendant nor did the plaintiff's conduct manifest an intent to obtain for the plaintiff any unfair advantage or operate to give her such. Compare *Gechijian* v. *Richmond Ins. Co.* 298 Mass. 487.

A purpose of the requirement to furnish due proof is to enable the defendant "to form an intelligent estimate as to whether the death came within the terms of the policy." *Howe* v. *National Life Ins. Co.* 321 Mass. 283, 285. *Cooper* v. *Prudential Ins. Co.* 329 Mass. 301, 303. *Manzi* v. *Provident Mutual Life Ins. Co.*, *ante*, 71, 76, 77. That purpose was accomplished here with respect to the possibility of suicide. The proof included such reference to the

record of death and autopsy as to enable the defendant to inform itself of the medical examiner's opinion of the secondary cause of death and the existence of a reference thereto in a record admissible in evidence (G. L. [Ter. Ed.] c. 46, § 19). It is not essential that all the facts which the insurer may reasonably deem relevant be included in the proof if the insurer has knowledge that such facts exist and unimpeded access thereto. See *Goldman* v. *Commercial Travellers' Eastern Accident Association,* 302 Mass. 74, 78–80; *Traiser* v. *Commercial Travellers' Eastern Accident Association,* 202 Mass. 292, 295. The insurer of course had access to the public records and the plaintiff told it in effect that they contained statements which it might deem relevant.

The nub of the issue is whether the plaintiff, for the preliminary requirement of "due proof," could make use of the official documents to show death by drowning without carrying into her proof, as an effective adopted part thereof, the disclaimed entries in respect of suicide. We think she could.

It may be that the plaintiff could have submitted a proof which the defendant would have deemed adequate without use of the death certificate to show death and death by drowning. The instructions on the back of the form for proof of loss supplied by the defendant suggest the need of the certificate although they do not apply in terms to this case.[1] But even if the defendant could not reasonably have rejected a submission which did not include the death certificate, we do not think it was necessary to proceed by such indirection. If due proof of death by drowning, apart from the official documents, was possible and a compliance with the policy, the defendant lost no technical advantage when the plaintiff used an alternative method of showing these facts. If "due proof" was not possible, in fact or under the policy, without showing the death certificate, a ruling that its necessary use constituted adoption by the plaintiff of the

---

[1] The instructions include the following: "Attending Physician's Statement on Form 15R — Must be completed by the doctor in attendance during the last illness of the insured. An official death certificate will be accepted in lieu of this statement if the policy or policies are incontestable, or if claim is not being made for any additional accidental death benefit."

opinion of suicide would mean that the plaintiff would be barred from litigating the fact of the cause of death, although she had shown probable facts indicative of a case for the jury. We are not disposed to construe the insurance contracts as requiring in effect that the plaintiff accept the opinion of the medical examiner as conclusive of her rights or, alternatively, if the course was open, that she adopt an indirect and uncertain way of proving noncontroversial facts which were provable, simply and certainly, by the limited use of the death certificate and the autopsy report. We see no occasion for a rule that would require that at this stage she act as though known relevant facts useful to the insurer and adverse to her claim did not exist or that she prove a better case than she would have to prove to get to the jury.

We have held that even in a case where the contract required proof satisfactory to the board of directors the inclusion in the proofs of evidence from which the jury could conclude that disease was a cause of the death did not prevent its being a jury question whether reasonable men should have concluded on the other relevant evidence in the proof that death was "caused wholly and entirely by external, violent and accidental means." *Traiser* v. *Commercial Travellers' Eastern Accident Association,* 202 Mass. 292, 296–297. Accord *Nichols* v. *Commercial Travellers' Eastern Accident Association,* 221 Mass. 540, 544, 547; *Barnett* v. *John Hancock Mutual Life Ins. Co.* 304 Mass. 564, 568–569. See *Goldman* v. *Commercial Travellers' Eastern Accident Association,* 302 Mass. 74, 75, 80. The same principle determines the issue here; the fact that in this case the conflicting evidence is in the same document is not a controlling distinction.

The general rule of evidence that the plaintiff is not bound by unfavorable testimony of witnesses whom the defendant has called, *Canavan* v. *George,* 292 Mass. 245, 250, *Dow* v. *United States Fidelity & Guaranty Co.* 297 Mass. 34, 39, is relevant in appraising the effect of unfavorable statements in the proof. Statements of physicians in certificates, or accompanying proofs, are not binding on the beneficiaries

of an insurance policy as a matter of law and may be rebutted in the absence of conduct by which a plaintiff is concluded or estopped. *Burke* v. *John Hancock Mutual Life Ins. Co.* 290 Mass. 299, 303.

The ground stated by the plaintiff for deletion from the death certificate was not good in law. The relevant sentence of c. 46, § 19, reads: "The record of the town clerk relative to a birth, marriage or death shall be prima facie evidence of the facts recorded, but nothing contained in the record of a death which has reference to the question of liability for causing the death shall be admissible in evidence. . . ." The last clause in this sentence was added by St. 1945, c. 570, § 1. Prior thereto we had held under this section that the provision without this clause required the inclusion of such an opinion word as "Accident" "in the record of facts as part of the cause and manner of death." *Dow* v. *United States Fidelity & Guaranty Co.* 297 Mass. 34, 37. Accord *Walcott* v. *Sumner,* 308 Mass. 413, 415; *Caccamo's Case,* 316 Mass. 358, 362; *Lydon* v. *Boston Elevated Railway,* 309 Mass. 205, 214. See *Boutillier* v. *Wesinger,* 322 Mass. 495, 498. See discussion in and compare *Commonwealth* v. *Slavski,* 245 Mass. 405, 416–417. Contra *Carson* v. *Metropolitan Life Ins. Co.* 156 Ohio St. 104; *Heffron* v. *Prudential Ins. Co.* 137 Pa. Super. Ct. 69. Compare *New England Trust Co.* v. *Farr,* 57 Fed. (2d) 103, 111. We are unable to construe the clause added in 1945 as applicable in this case. There is here no "question of liability for causing the death." The language of the statute does not say "but nothing which would be relevant to the issue of liability for causing death shall be admissible in evidence in any case." Compare *Trump* v. *Burdick,* 322 Mass. 253, 254–255.

The autopsy stands in different aspect. *Jewett* v. *Boston Elevated Railway,* 219 Mass. 528.

The basis of the admissibility of the recorded opinion of suicide is relevant in determining the significance of a direct or indirect inclusion thereof, with disclaimer, in the proof submitted to the defendant. The statutes, G. L.

(Ter. Ed.) c. 38, § 7; c. 46, § 1, require in effect that the medical examiner give such an opinion and that the clerk record it. *Dow* v. *United States Fidelity & Guaranty Co.* 297 Mass. 34, 37. There is no exception for cases where the known circumstances are inconclusive as between accident, disease or suicide. The opinion fact becomes prima facie evidence by virtue of the statute and not because of probative force necessarily inherent in it or in the underlying facts. The case is distinguishable from *Howe* v. *National Life Ins. Co.* 321 Mass. 283, 288, where the autopsy showed the pathological facts underlying the conclusion of heart disease and the proofs were held to show that disease and not accident was the cause of death.

2. The proofs submitted meet the general tests stated in the cases for due proof. "'Due proof' means evidence that is proper, suitable and sufficient in the opinion of the tribunal, not in that of the insurer." *Belbas* v. *New York Life Ins. Co.* 300 Mass. 471, 473, and cases cited. "'Proof' . . . must mean evidence in some form, such form as is usual and customary in such cases, or as is recognized by law, and is calculated to convince or persuade the mind of the truth of the fact alleged." *Fitchburg Savings Bank* v. *Massachusetts Bonding & Ins. Co.* 274 Mass. 135, 152. *Hovhanesian* v. *New York Life Ins. Co.* 310 Mass. 626, 629–630. It need not be in form admissible in a court of law. *Lovering* v. *Mercantile Marine Ins. Co.* 12 Pick. 348, 359–360. It is designed "to show that the event has happened upon which the defendant had promised to pay." *Howe* v. *National Life Ins. Co.* 321 Mass. 283, 285. *Cooper* v. *Prudential Ins. Co.* 329 Mass. 301, 303. See *Barnett* v. *John Hancock Mutual Life Ins. Co.* 304 Mass. 564, 570.

The force of the proof to show accidental death does not depend on the legal presumption against suicide. There is in the submissions a showing of evidence which if duly proved would permit a jury to find accident as the cause, and the probative force of this continues even though the disclaimed opinion of suicide is construed as included in the proof. This is true both as to the circumstantial evidence

supporting the inference of accident, *Von Ette's Case*, 223 Mass. 56, 59–60, see *Commonwealth* v. *Doherty*, 137 Mass. 245, and as to the inference which may be drawn from the usual conduct of mankind in the face of the normal strong urge to life and the compulsions of law and religion against self destruction. *Commonwealth* v. *Clark*, 292 Mass. 409, 415, and cases cited (insanity). *Silva* v. *Fidelity & Casualty Co.* 252 Mass. 328 (drowning, accident or suicide). *Bohaker* v. *Travelers Ins. Co.* 215 Mass. 32, 36 (fall, accident or suicide). *Nichols* v. *Commercial Travellers' Eastern Accident Association*, 221 Mass. 540, 544 (fall from train, accident or suicide). *Dow* v. *United States Fidelity & Guaranty Co.* 297 Mass. 34, 38. *New York Life Ins. Co.* v. *Gamer*, 303 U. S. 161, 172. *Eastern Commercial Travelers Accident Association* v. *Sanders*, 108 Fed. (2d) 643, 645. McCormick on Evidence, § 311. Wigmore on Evidence (3d ed.) § 2491. Model Code of Evidence, pages 306, 308, pars. b and d; pages 52, 53, pars. b and d. See *Sargent* v. *Massachusetts Accident Co.* 307 Mass. 246, 250; and for a case on preliminary proofs *Lampert* v. *John Hancock Mutual Life Ins. Co.* 28 Fed. Sup. 142, 143. Compare *Connolly* v. *John Hancock Mutual Life Ins. Co.* 322 Mass. 678, 682 (good health).

The "prima facie evidence of the facts recorded," in this case the opinion fact, suicide, deprives the plaintiff of the benefit of the legal presumption which in the absence of evidence requires that it be assumed that the insured did not commit suicide. Model Code of Evidence, Rule 701; Rule 704 (2) and associated discussion. *Brown* v. *Henderson*, 285 Mass. 192, 195–196. *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 378. *Perry* v. *Boston Elevated Railway*, 322 Mass. 206, 209. *Del Vecchio* v. *Bowers*, 296 U. S. 280, 286. Beyond this, bringing into the case the "prima facie evidence" of suicide operates only to cause it to be the usual contested case which "is to be considered as a whole and the truth ascertained as in other cases of contradictory evidence." *Chandler* v. *Prince*, 217 Mass. 451, 455. It is for the jury to analyze each part of the evidence and treat it according to its worth. *Ibid.*, 455. Accord *Riley* v.

*Murphy*, 265 Mass. 420, 422; *Cohasset* v. *Moors*, 204 Mass. 173, 179; *Shamlian* v. *Equitable Accident Co.* 226 Mass. 67, 70; *Thomes* v. *Myer Store Inc.* 268 Mass. 587, 589–590; *Lexington* v. *Ryder*, 296 Mass. 566, 568; *Boyas* v. *Raymond*, 302 Mass. 519, 521. See *Turner* v. *Williams*, 202 Mass. 500, 504–505 (conflicting presumptions).

The burden is on the plaintiff to establish as a part of her case that facts do not exist which under the provisos of such contracts as are before us bar the operation of the double indemnity clause. *Lubianez* v. *Metropolitan Life Ins. Co.* 323 Mass. 16, 18–19. *Gorski* v. *New York Life Ins. Co.* 315 Mass. 17, 19–20. But we think that the facts shown in the proofs are nevertheless sufficient for purposes of preliminary "due proof." These facts if duly proved by competent evidence would permit the conclusion, which the policies require, that death resulted from accident "as a direct result thereof, independently and exclusive of all other causes, and . . . was not caused directly or indirectly by disease or bodily or mental infirmity or by self destruction, sane or insane." The statement of the plaintiff in the proof that the insured "either became dizzy or fainted and toppled into the river and drowned" is we think not expressly an assertion of an accident due "to bodily . . . infirmity " such as to foreclose that issue. Causes of fainting or dizziness other than bodily infirmity are met in common experience.

Death by accidental drowning is death by external and violent means. *Simoneau* v. *Prudential Ins. Co.* 89 N. H. 402, 404. *Mutual Life Ins. Co.* v. *Hess*, 161 Fed. (2d) 1, 4. *Kanne* v. *Metropolitan Life Ins. Co.* 310 Ill. App. 524. See *Silva* v. *Fidelity & Casualty Co.* 252 Mass. 328.

We intend to suggest no view as to the weight of the evidence indicated in the proofs or the conclusion which the fact finding tribunal reasonably should draw from such evidence as may be adduced at the trial.

*Exceptions sustained.*
*Appeal dismissed.*